GEORGE H. and ADELAIDE SMITH by their guardian v. R. H. and W. H. SMITH, Executors.

*Will—Legacy in Lieu of Dower—Liability of Executor—Commissioner—Insolvency of Estate—Liability of Legatees to Refund.*

1. Where a will gave certain legacies and devises to a widow in lieu of dower, which amounted to less in value than her dower ; *It was held*, that such legacies and devises were not assets liable for the debts of the testator.

2. Where cotton belonging to an estate was shipped by the executors to a firm of commission merchants in good repute, who preferred claims against the proceeds arising out of their transactions with the testator and also with testator's widow, and while the matter was still unsettled the firm failed ; *Held*, that the executors are not liable to the creditors of the estate for the loss.

3. But if while the demands of the firm are being resisted by the executors and are still unadjusted, the executors ship other cotton to the same firm, which is not then notoriously insolvent, and the proceeds are lost; *Held*, that their previous dealings should have put the executors on their guard and they are liable to the creditors for the loss.

4. For effecting an arrangement whereby the creditors of an estate took $49,500 worth of land in payment of their claims, the executors were allowed two and one half per cent commissions.

5. Where all the devisees under a will, including the plaintiffs and one of the executors, took the lands devised to them and for two years received the rents and profits, and the estate proving insolvent, then surrendered the same ; *Held*, that as between the plaintiffs and said executor, the executor was not chargeable with the rents.

6. Where a testator was a prudent business man and his indebtedness was apparently small as compared with his estate, and the will set aside enough property in his judgment to pay his debts, and where the devises were specific (farms) and already in possession of the devisees ; and when the value of testator's estate was so greatly impaired by the effects of a financial crisis and an inability to collect debts due the estate, that it proved insolvent ; *Held,* that the executors have a right to call upon the legatees under the will to refund.

7. Where, the plaintiff having received a legacy of stock, &c., sold the same to defendant H, and received in part payment a note of the testator and sued upon it, and the executors answer, for the reasons stated above, that they have nothing to pay with except the plain-tiff's legacy ; *Held,* that the equity of the executors to compel the plaintiff to refund the legacy is a good counter-claim to the plaintiff's demand.

CIVIL ACTION, heard upon exceptions to a referee's report, at Spring Term, 1878, of HALIFAX Superior Court, before *Seymour, J.*

The plaintiffs by their guardian, W. H. McRary, brought this action to recover $763.96, the amount of a bond. which was made by W. R. Smith, the testator of defendants, to one John R. Herring, and transferred by him to said guardian ; and demanded payment of the same of the executors of W. R. Smith, and of Herring, the endorser.

The defence set up was a counter claim, the material allegations in reference thereto are as follows : The testator devised to plaintiffs, his grand-children, a certain tract of land, and personal property, and upon the death of the testator, the father of plaintiffs took charge of the same together with the personal property thereon under the provisions of the will, the said Herring having previously been in possession thereof. The executors assented to the legacy of the stock, &c., and to the delivering the same to the guardian, by the father ; and the guardian sold a portion to Herring for an amount about equal to the sum demanded, and received in part payment, the bond declared on. The executors took no refunding bond from the guardian, but

were induced to pay the legacy, by the fact, that the testator owned a very large estate, and was a prudent business man; and had directed his executors to sell certain lands, including his interest in the "Chatham county lands and the academy lot," and if the proceeds thereof should be insufficient to pay his individual debts, they should supply the deficiency by disposing of the devises and legacies, other than those to his wife. That the testator never had title to the academy lot, and it was not conveyed by his will; that the will provided that the "river farm" in possession of Peter E. Smith should go to him upon his discharging a certain debt to which the testator was security, and the "cypress swamp" tract to another devisee upon like terms; that in addition to the lands devised, the testator at the time of his death was seized of the "Edward's Ferry" and other tracts, worth about $65,000; and of undisposed of personal property valued at $4,000, and notes, &c., to the amount of about $65,000, (scaled value) from which the executors expected to realize at least $10,000, but owing to the insolvency of some of the debtors, they succeeded in collecting only about $5,500. The sum realized from the crop of 1872, which went into the hands of the executors, was about $8,000. The testator's debts, which were known to the executors at the time of their assent to said legacy amounted to about $25,000, but they believed that the property set apart by the testator would be sufficient to discharge the same. The deficit was caused however by the application of the proceeds of sale of crop by commission merchants, to certain debts due them, of which the executors had no notice; and also by the inability of the executors to sell certain other lands; but they have individually become responsible for the balance of their testator's debts. That the lands have depreciated since the financial crisis of 1873, and the estate is insolvent. And the defendants insist that the personal property delivered

by them to the plaintiffs as aforesaid has discharged the said bond sued on. And the plaintiffs in their reply among other things allege that the defendants were guilty of laches.

At January Special Term, 1878, the case was referred by *Schenck, J.,* to J. M. Mullen, Esq.; for an account, who reported substantially as follows: That said testator died in June, 1872, and the defendants duly qualified as executors to his will; that prior to his death he put certain devisees in possession of lands devised to them, and they used and enjoyed the same without charge, and were in possession at his death; that in February, 1854, he conveyed to defendant, W. H. Smith, a tract of land of which he took possession and has claimed it by virtue of the deed—the said tract was also devised to him by the will, and the inventory returned by the executors includes said tract among the lands of the testator; that on the 1st of January, 1873, having ascertained that the debt of Peter E. Smith to which their testator was surety exceeded the value of the land devised to him, the executors took possession of it, and being unable to get a fair price, bid it in for the benefit of the estate and have charged themselves with the rents accruing therefrom; that other devisees were permitted to remain in possession of their respective tracts, the part used by the widow not being worth as much as her dower interest would have been; that in January, 1873, the executors directed the father of the plaintiffs to retain possession of the property devised and bequeathed to them, but it did not appear whether he took possession as agent of the guardian or not; that in March following the guardian, who lives in Wilmington, visited the premises with the executors and with their consent took possession of all the property of his wards, and sold some of the personal property to said Herring for the sum of $985 in presence of and with the consent of the executors, and rented the land to said Herring

for a certain number of pounds of lint cotton, and shipped $200 worth of cattle to Wilmington; and on the 1st of January, 1875, the executors took possession of said premises.

The referee further finds that Herring in part payment of the property sold him as aforesaid endorsed and delivered the bond sued on, to the guardian; that at the time said personal property was turned over to and sold by the guardian, the executors valued the property set apart in the will to pay debts, including net value of the crop of 1872, at $24,010, and had no notice at the time the account of sales was rendered, of an amount ($2204,65) claimed by B, N & S, commission merchants in Norfolk, but had notice of individual debts of their testator amounting to about $25,000, and of debts for which he was surety, principally for his sons, amounting to $15,000 to $18,000; and at that time they valued the other property of the testator, including the "Edwards Ferry farm," at about $42,000; that a great many of the notes, &c., proved to be worthless, and the lands depreciated in value in 1873; that other lands besides those above mentioned were sold and bid in by the executors and the rents applied to the payment of debts; that on the 1st of January, 1876, finding that they could not sell the lands to an advantage, the executors agreed with the creditors of the estate, that W. H. Smith should take a part of the Edward's Ferry tract, subject to the rights of the widow, at $12,000, and assume debts of testator to that amount, (and other devisees took other tracts at certain prices upon like terms); that the prices so agreed upon were fair and the arrangement advantageous to the estate; that the other part of the Edward's Ferry tract had been previously disposed of, at $5,000, and the tract devised to the plaintiffs, at $7,000, which were fair prices; that the proceeds of sale of these lands have been used to pay debts, which were unpaid on the 1st of January, 1876, except a

small sum due by W. H. Smith on his purchase; that all the other estate (except the land in Chatham county, and that devised to the widow, and the personal property delivered to the plaintiffs as aforesaid) has been disposed of by the executors and applied to the payment of debts, and that the unpaid debts, including the note sued on, amount to $3549.58.

The referee says that the executors have made no attempt to dispose of the " home place " of W. H. Smith for the benefit of the estate; and that they have not disposed of the "academy lot " for the reason that the title was in Peter E. Smith, that the executors are not chargeable with the proceeds of cotton shipped in 1873 to Baker, Neal and Sheppard, but while the proceeds of the cotton was held by them, they failed, and the executors recovered judgment against them after their failure, but never collected the money; nor are they to be charged with cotton shipped to said merchants in January, 1875 ; that the executors had an intimation of said failure a week or so before it took place in February, 1875, but not in time to protect the estate; that they did not take the funds out of said merchants' hands as they kept an account with them; and that the executors are not chargeable with the rents received by the devisees during the years 1873,-'74.

The exceptions to this report which are sufficiently set out in the opinion were heard before His Honor and overruled, and the plaintiffs appealed. Upon the facts found by the referee, His Honor gave judgment for plaintiffs for amount demanded, and the defendants appealed, and both appeals were heard together.

*Mr. R. O. Burton, Jr.*, for plaintiffs.
*Messrs. T. N. Hill,* and *Busbee & Busbee,* for plaintiffs.

READE, J.   The action is upon a bond to pay money exe-

cuted by the testator of the defendants, and nothing more appearing they would be entitled to recover the amount out of the defendant executors as a matter of course. But the defendants say that they have no assets with which to pay it. And it being referred for an account, it appears from the account reported by the referee that that defence is true,—that not only have the executors no assets, but after having exhausted the assets, the estate is in their debt for disbursements and commissions more than $5,000.

For the purpose however of fixing the executors with assets, the plaintiffs file exceptions to the account reported. There are twenty exceptions and the papers are very voluminous. We have carefully examined the whole of them in detail, and there are few of them involving important principles, so as to make it necessary or proper that we should consider them elaborately; and therefore we agree with His Honor in overruling them except as hereinafter stated:—

1. The first exception, that the executors are not charged with the value of legacies and devises to widow is overruled, because the will provides that they shall not be charged until all the other property is exhausted, and because they do not amount to more than her dower at law.

2. The second exception, that the executors are not charged with the value of the W. H. Smith "home place" is overruled, because it was not of the estate of their testator.

3. The third exception as to the academy lot is overruled for the same reason.

4. The fourth exception is that executors are not charged with the proceeds of cotton shipped to Baker, Neal & Sheppard in 1874 is overruled, because they were in good repute and failed.

5. The fifth exception, that executors are not charged with cotton shipped to the same firm as above in 1875 is

allowed, because although they had not then notoriously failed, yet their unfair dealing with the shipment of 1874 was sufficient to put the executors on their guard:

6. The sixth exception, that the executors are allowed five per cent on the value of the lands ($49,500) which the devisees and others took under an arrangement with the creditors, the devisees accounting to the creditors for their value, is allowed, because five per cent is too much. Two and a half per cent is enough.

7. The seventh exception, that executors are not charged with $2,204.20 retained by Baker, Neal & Sheppard out of shipment of cotton to them is not allowed, because the testator owed them that amount which was to be paid in that way.

8. The eighth exception, that executors are not charged with $6,200 retained by W. H. Smith, one of the executors, out of his purchase of the Edward's Ferry place under the aforesaid agreement with the creditors, is not allowed, because the testator owed him that amount. It is true this allows to said W. H. Smith the whole of his debt, whereas under the statute now existing he is only entitled to a ratable part with other creditors, and if it were not true that the plaintiff has also been paid the whole amount of his debt, the exception with the proper modification would have to be allowed, but from the view which we shall hereafter present, it is probable that the exception will not avail the plaintiff.

9. The ninth exception, that the defendants are not charged with the rents of cypress swamp for 1873 and '74 is not allowed, because it is one of the tracts devised by the testator to his children respectively, and which were delivered over to them by the executors at the close of 1872, under the impression that they would not be needed to pay debts, and were held by the devisees for the years 1873 and '74 without accounting for rent. Of course the executors

are accountable to the creditors for these rents until all the debts are paid, and if the plaintiffs' debt has not been paid, then they are accountable to the plaintiffs for these rents and profits; but as already said it will probably turn out that the plaintiffs' debt has been paid. And furthermore just as W. H. Smith and other devisees held the lands devised to them without rent, so the plaintiffs held lands devised to them for the same years without rent, and if W. H. Smith and the other devisees must account for the rents of their lands for the years 1873 and '74, so must the plaintiffs account for the rents of the lands devised to them.

10. The twentieth exception, that the executors are not charged with the academy lot is not allowed, because it was not of the estate of the testator.

From the tenth to the nineteenth exceptions inclusive are intended to present such a state of facts as will charge the executors with negligence in delivering over the legacies and devises before the debts were paid, and thereby defeat their equity to have the property restored, or an account for its value. And as in our opinion there was no negligence on the part of the executors the said objections are overruled.

The facts relied on to show negligence on the part of the executors are substantially these: The testator was a man of large estate. The credits due him had a face value of more than one hundred and thirty thousand dollars, with an estimated value of $10,000. He had also considerable personal estate. The crops were estimated at $10,000 or $12,000. His landed estate was very large, a portion of which was directed to pay debts, and the remainder consisting of a number of valuable farms were devised to his children, and one of the farms was devised to the plaintiffs who are his grand-children. The testator was supposed to owe some $25,000 and to be surety for some $15,000 more, principally for his children. And where he was surety

for his children he charged their legacies with the debt. The testator was a prudent business man and was reasonably supposed to know the state of his affairs. Under this state of affairs the executors, one of whom is his son and the other his brother, at the close of the year 1872, some six months after the death of the testator, delivered over all the specific legacies and devises to the persons entitled under the will, supposing that enough was retained to pay the debts. Indeed the lands were already in the possession of the devisees, placed there by the testator in his life time, and the executors did not disturb their possession until it was found necessary to take them to pay debts. One of the farms aforesaid with all the personal property upon it was devised to the plaintiffs, and they were allowed to retain both the land and the personal property.

The plaintiffs now complain that this makes out a case of negligence against the executors, and that they can not call upon the legatees to refund.

It is well settled that an administrator or executor must look well to his business, and not deliver over distributive shares or legacies until he has paid the debts. And that the distributees and legatees have the right to consider the property delivered over to them as theirs, and can never be called upon by the administrator or executor to refund unless some mistake or accident establishes an equity. Here we think there was such mistake and accident. The business habits and good sense of the testator, the small amount of his indebtedness, apparently, as compared with his estate, his setting aside enough property in his judgment to pay his debts, not unreasonably induced the executors to believe that they might assent to the legacies. The fact that the devises were specific—farms—in possession of the devisees, made it advisable that they should be delivered over as soon as possible. And the pecuniary crisis which followed and the inability to collect debts and the depre-

SMITH *v.* SMITH.

·ciation of property were an *accident* against which the executors could not provide. Appreciating this, it seems that every one of the legatees and devisees has refunded ·except the plaintiffs, and they are minors.

The case before us is this: the plaintiffs sold the personal property bequeathed to them upon their farm to the defendant Herring for a note which he held against the testator. And then the plaintiffs sue the executors upon this note, and the executors answer that they have nothing to pay the note with except the legacy which was given to the plaintiffs; that if the plaintiffs would refund to them the legacy, then they could pay the note out of the legacy. As that is not done, then the executors insist that their equity to have the plaintiffs refund the legacy, is a good counter-claim against the plaintiffs' note sued on. And such is our opinion.

Of course if there are assets in the executors' hands to pay the debts of the estate, this note included, without calling upon the plaintiffs to refund, then the executors must pay. And as the land in Chatham is unsold, and as we have sustained some of the plaintiffs' exceptions, they will be entitled, if they think it worth while, to have the land sold and the account reformed. If desired, the clerk of this Court will reform the account.

If the plaintiffs shall not move, then the judgment will be reversed, and judgment here for the defendants.

PER CURIAM.                    Judgment accordingly.

NOTE.—In a case between the same parties on the defendant's appeal :—

READE, J. The facts in this case are the same as in the case between the same parties at this term, and the principles decided are the same,—both parties having appealed. The judgment in this case will abide the judgment in that. Defendants will recover costs.